# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Exclusive Brands LLC,

                    Plaintiff,          Case No. 19-cv-11062

v.                                      Judith E. Levy
                                        United States District Judge
City of Garden City, Michigan, *et al.*,
                                        Mag. Judge Elizabeth A.
                    Defendants.         Stafford

_____/


**OPINION AND ORDER GRANTING DEFENDANTS CITY OF GARDEN CITY, GARDEN CITY BUILDING DEPARTMENT, DALE DOUGHERTY, AND GARDEN CITY CITY COUNCIL'S MOTION TO DISMISS [23]; GRANTING DEFENDANT PATRICK J. SLOAN'S MOTION TO DIMISS [38]; AND GRANTING DEFENDANT JEFF VAN DAM'S MOTION TO DISMISS [42]**


## I.    Introduction

Plaintiff Exclusive Brands LLC brought this action for injunctive, declaratory, compensatory, and punitive relief pursuant to 42 U.S.C. § 1983 for alleged violations of its rights to (1) equal protection under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of Michigan; (2) procedural due process under

the Fifth Amendment of the U.S. Constitution and the Michigan Constitution; and (3) substantive due process under the Fifth Amendment of the U.S. Constitution and the Michigan Constitution. Plaintiff, a medical marijuana dispensary, argues that Defendants Garden City and a number of its municipal entities and employees unlawfully denied it a special use permit to operate a medical marijuana facility in Garden City, Michigan.

Defendants collectively filed three motions to dismiss in this case: (1) Defendants Garden City, Building Department, Dougherty, and City Council filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted; (2) Defendant Sloan filed an answer to Plaintiff's second amended complaint and subsequently filed a motion to dismiss for a failure to state a claim; and (3) Defendant Van Dam filed a motion to dismiss for lack of subject-matter jurisdiction and/or for failure to state a claim. For the reasons below, the Court GRANTS all motions and dismisses this case.

## II.   Background

### A. Parties

Plaintiff is a Michigan Limited Liability Corporation with its principle place of business in Livonia, Michigan. (ECF No. 15, PageID.79.) Plaintiff sought a special use permit to operate a medical marijuana facility in Garden City, Michigan. (*Id.* at PageID.81.)

Defendant City of Garden City ("Garden City") is a Michigan municipal corporation (*Id.* at PageID.79), and Defendant Garden City Building Department ("Building Department") is a "a body within [D]efendant Garden City." (*Id.* at PageID.80.)

Defendant Dale Dougherty is the City Manager of Defendant Garden City and the Planning and Zoning Administrator for Defendant Garden City. (*Id.* at PageID.79.) The only facts with respect to Defendant Dougherty in Plaintiff's second amended complaint are his job title and his general role as City Manager. (ECF No. 15, PageID.80 ("[D]efendant Dougherty appoints the heads of nearly all departments of [D]efendant Garden City, administers personnel relations, and prepares policy recommendations for [D]efendant City Council . . . . [D]efendant Dougherty is responsible for the direction and supervision of the administration of all departments . . . of [D]efendant Garden City.").)

Defendant Garden City City Council ("City Council") is "the legislative body within [D]efendant Garden City." (*Id.*)

Defendant Patrick J. Sloan "was and is a Planning and Zoning Consultant and Senior Principal Planner to [D]efendant Garden City." (*Id.*)

Defendant Jeff Van Dam is "the Administrator for [D]efendant . . . Building Department." (*Id.*) Defendant Van Dam contends that he is not an employee of Defendant Garden City but rather an employee of Buccilli Group, LLC, which provides the Building Department services on a contract with Defendant Garden City. (ECF No. 42, PageID.294.) Plaintiff's complaint is silent as to this allegation.

## B. Factual Background

### i. *Garden City's Medical Marijuana Ordinance*

The State of Michigan's Medical Marihuana Facilities Licensing Act ("MMFLA") enables a municipality to decide whether to allow marijuana facilities within the municipality by adopting an ordinance. M.C.L. § 333.27205(1). Pursuant to MMFLA, Defendant Garden City adopted an ordinance in February 2018 to allow medical marijuana facilities within its boundaries and to participate in the medical

marijuana facilities licensing system. CITY OF GARDEN CITY, REGULAR COUNCIL MEETING MINUTES FEBRUARY 5, 2018, http://www.gardencitymi.org/AgendaCenter/ViewFile/Minutes/_0205201 8-173; *see* GARDEN CITY, MICH., CODE OF ORDINANCES § 154.165. This ordinance authorizes and specifies the number and types of permitted medical marijuana facilities with special land use approval, and zoning regulations.[1] *Id.*

Garden City's existing standards and procedures for special use regulations, adopted in its ordinances §§ 154.415–17, apply to the medical marijuana facility special use applicants. § 154.165(C). According to Garden City's ordinances, the Planning Commission and the City Council approve or deny special use permit applications. § 154.416. When an applicant submits the special use application materials, required fees, and multiple copies of the completed site plan to the Building Department, the Zoning Administrator and other city officials review the application package and make recommendations as appropriate. §§ 154.416(E)-(F). After revising the site plan and

---

[1] More specifically, it permits Class A, B, and C grow operations, marijuana processing facilities, and provisioning centers as a special land use in the M-1 Light Industrial District zoning. GARDEN CITY, MICH., CODE OF ORDINANCES § 154.165.

application materials based on the recommendations, the applicant then submits a revised plan for further review. § 154.416(G). The Planning Commission reviews the application, and it "may approve, approve with conditions, or deny a Special Use request." § 154.416(I)(1). After the Planning Commission makes a decision and forwards it to the City Council, the City Council determines whether to consider the special use application. §§ 154.416(I), (J). If the City Council decides not to consider the application, then the Planning Commission's decision is final. § 154.416(J). If, however, the City Council considers the application, it takes the Planning Commission's decision as a recommendation, and the City Council makes a final decision to "approve, approve with conditions, or deny a Special Use proposal" by reviewing the application and site plan, along with findings of the Planning Commission. §§ 154.416(J), (L). All decisions at each stage of the process are subject to the complete discretion of the Planning Commission and the City Council.[2] Issuing a

---

[2] During the initial review process by the Zoning Administrator and other city officials upon receipt of the submission, no decision is made with regards to the submission. Instead, city officials prepare a written review for the applicant, "specify[ing] any deficiencies in the site plan and application and make recommendations as appropriate." § 154.416(F).

building permit requires a submission of the final approval of the special use application along with other materials. § 154.416(P).

On July 23, 2018, the City Council approved the proposal limiting the total number of medical marijuana facilities in Garden City to three. (ECF No. 23-5, PageID.166.) Then, on September 24, 2020, the City Council adopted the amended ordinance, reflecting the change. (ECF No. 23-8, PageID.190.)

### ii. Medical Marijuana Facility Licensing Process

The State of Michigan Department of Licensing and Regulatory Affairs ("LARA") employees a two-step process for medical marijuana facility licensing: (1) pre-qualification; and (2) license qualification. *Medical Marihuana Facility License Application*, Dep't of Licensing and Regulatory Affairs, https://www.michigan.gov/lara/0,4601,7-154--453929--,00.html (last visited June 22, 2020). The pre-qualification step involves a background check of the applicant and all supplemental applicants, and it requires applicants to disclose those entities with an indirect or direct ownership interest. *Id*. Pre-qualification may be granted before an applicant secures a physical location for the facility. *Id*. The next step, license qualification, requires a pre-qualified applicant to

submit information specific to the facility location and to the type of facility for which the license is applied. *Id.*

LARA cannot issue a medical marijuana facility license unless the municipality where the proposed facility is located has authorized marijuana facilities through its ordinance. *Id.* After an applicant completes the license qualification step, the Medical Marihuana Licensing Board ("MMLB") makes a final approval of the application. *Id.*

### iii. Plaintiff's Special Use Permit Application Process

On May 31, 2018, MMLB granted Plaintiff a prequalification status pursuant to the licensing provisions of the MMFLA. (ECF No. 15, PageID.81.) Beginning in May 2018, Plaintiff's representative contacted Defendant Sloan frequently "regarding Plaintiff's desire to obtain a special use permit" for a medical marijuana facility. (*Id.*) In July 2018, Plaintiff entered into a $1.2 million purchase agreement for property in Garden City to operate a medical marijuana facility, contingent upon Garden City's approval of a special use permit. (*Id.* at PageID.82.) Plaintiff made a non-refundable $25,000 deposit for the property and additionally spent approximately $15,000 to prepare for renovation and apply for a special use permit. (*Id.*)

Some time prior to August 6, 2018, Sloan advised Plaintiff's representative that, if submitted by August 13, 2018, Plaintiff's application for a special use permit "would be accepted and placed on the agenda" for the Garden City Planning Commission's meeting on September 13, 2018. (*Id.*) However, on August 6, 2018, the City Council established a six-month moratorium on accepting additional medical marijuana special use permit applications. (*Id.* at PageID.83; ECF No. 23-6, PageID.169.) The moratorium began on August 7, 2018. (ECF No. 23-6, PageID.169.) The City Council adopted a resolution to reaffirm the moratorium, mandating the moratorium to expire on February 7, 2019, unless the City Council extended it. (ECF No. 42-6, PageID.361.) The resolution specified that medical marijuana facility permit applicants impacted by the moratorium could appeal a deferral of their application with a written request for appeal submitted to the Building Department. (*Id.*) Applicants seeking a hearing on their appeal had to request a hearing in writing, and the hearing would be held before the City Council. (*Id.*) However, Sloan did not inform Plaintiff's representative or "any other representative of Plaintiff or parties working with Plaintiff" of the proposed moratorium prior to the August 6, 2018 City Council meeting.

(ECF No. 15, PageID.82–83.) Moreover, neither the Building Department nor Van Dam informed Plaintiff of the moratorium when Plaintiff submitted its application. (*Id.* at PageID.83.) Plaintiff, without knowledge of the moratorium, applied for a permit to the Building Department on the deadline of August 13, 2018 "in compliance with, and in reliance upon, the representation by [D]efendant Sloan." (*Id.*) The Building Department accepted Plaintiff's application[3] and the application fee of $3,950. (*Id.*) On August 23, 2018, Plaintiff's representative learned of the moratorium in a phone call to the Building Department. (*Id.*) Sloan informed Plaintiff of the moratorium on August 29, 2018. (*Id.*)

Plaintiff alleges that Sloan knew that the City Council planned to impose a moratorium prior to its meeting on August 6, 2018 (*Id.* at PageID.82) but "intentionally failed to inform" Plaintiff.[4] (*Id.* at

---

[3] According to Defendant Van Dam, this was Plaintiff's first application for a medical marijuana special use facility permit. (ECF No. 42, PageID.310.)

[4] Conversely, Defendant Van Dam alleges that he "never personally interacted with Plaintiff's representatives prior to the moratorium's enactment." (ECF No. 50, PageID.515.) The Court points to Van Dam's alleged contrary fact because Van Dam filed a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. For the purpose of Rule 12(b)(1) motion, the Court does not automatically defer to Plaintiff's set of facts. *See infra* section IV(B) for the rules regarding treatments of the facts from Defendant Van Dam's Rule 12(b)(1) motion to dismiss and the application of the facts.

PageID.85.) Plaintiff also alleges that Van Dam and/or the Building Department, too, had "superior knowledge" of the City Council's intention to impose a moratorium. (*Id.* at PageID.84.) Moreover, Plaintiff argues that Defendants Sloan, Van Dam and/or the Building Department "knew, or should have known, that Plaintiff . . . was relying upon the expressed deadline of August 13, 2018 for submission of its application."[5] (*Id.* at PageID.84.) Plaintiff alleges that it would have applied for a special use permit before the August 6, 2018 City Council meeting, had Defendants Sloan, Building Department, and/or Van Dam advised Plaintiff or its representative of the proposed moratorium. (*Id.* at PageID.83–84.) Plaintiff argues that its application and site plan "compl[y] with all applicable zoning rules and regulations governing the proposed use" and are "compatible with the Master Plan of [D]efendant Garden City." (*Id.* at PageID.85.)

On September 6, 2018, Plaintiff requested an appeal for a deferral of its application to the Building Department (*Id.*), addressing the appeal

---

[5] Plaintiff alleges that Defendant Dougherty "breached his duties . . . by failing to properly direct and supervise the administration of all departments, including [D]efendant Building Department, which failed to advise Plaintiff Exclusive Brands of the impending moratorium prior to its implementation." (ECF No. 15, PageID.84.)

letter to Van Dam. (ECF No. 50, PageID.525–527.) According to Van Dam,[6] the Building Department forwarded the appeal to the City Council (ECF No. 51, PageID.546), and the City Council heard Plaintiff's appeal at its regular meeting on December 3, 2018.[7] (ECF No. 42, PageID.295.) Also, Van Dam contends that Plaintiff did not appeal further to the Wayne County Circuit Court. (ECF No. 51, PageID.540.)

In addition to the allegations above, Plaintiff argues that the City Council "improperly and unlawfully 'grandfathered in' one or more ineligible or unqualified applicants for special use permits for medical marijuana facilities" after the City Council adopted the ordinance amendment. (ECF No. 15, PageID.85.) However, Plaintiff does not identify any other special use permit applicants similarly situated to Plaintiff around the time the moratorium took effect. (*Id.*)

## C. The Current Litigation

---

[6] *See infra* section IV(B) for the treatments of the facts from Van Dam's 12(b)(1) motion to dismiss and accompanying evidence.

[7] Plaintiff's appeal letter did not specifically request a hearing, although the resolution adopted by the City Council on August 20, 2018 requires applicants to specify in writing that they request a hearing. (ECF No. 42-6, PageID.361.) Contrary to the City Council's record on December 3, 2018 (ECF No. 42, PageID.295; ECF No. 42-10, PageID.398), Plaintiff alleges that "Defendants . . . den[ied] Plaintiff a public hearing and an opportunity to be heard before [D]efendant Garden City's Planning Commission and other governmental bodies." (ECF No. 15, PageID.88.)

Plaintiff filed its second amended complaint on August 11, 2019. (ECF No. 15.) Initially, Plaintiff filed a complaint against only Defendants Garden City, the Building Department, and Dougherty. (ECF No. 1.) Plaintiff names three additional Defendants in the second amended complaint: Defendants Patrick J. Sloan and Jeff Van Dam, individually and in their official capacity, and Defendant Garden City City Council. (ECF No. 15, PageID.78.)

In response to Plaintiff's second amended complaint, Defendants filed three motions to dismiss. On September 12, 2019, Garden City, the Building Department, Dougherty, and the City Council filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. (ECF No. 23.) Defendant Sloan filed an answer to Plaintiff's second amended complaint on September 5, 2019 (ECF No. 21) and subsequently on October 17, 2019, filed a motion to dismiss for failure to state a facially plausible claim. (ECF No. 38.) Finally, Defendant Van Dam, on December 5, 2019, filed a motion to dismiss for lack of subject-matter jurisdiction and/or for failure to state a claim. Defendant Van Dam also requests costs and attorney fees associated with the motion. (ECF No. 42, PageID.279.)

13

### III.   Legal Standard

Defendants Garden City, the Building Department, Dougherty, the City Council, and Defendant Van Dam filed motions to dismiss for lack of subject-matter jurisdiction and failure to state a legal claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 23, 42.)

When a court's subject-matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Proving subject-matter jurisdiction requires a demonstration that the plaintiff has constitutional standing to bring suit. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). If a plaintiff cannot demonstrate constitutional standing, the case must be dismissed. *Id.* at 607 (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005)). Constitutional standing requires three elements: (1) that the plaintiff has suffered "an invasion of a legally protected interest, which is concrete and particularized . . . and . . . actual or imminent"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that a favorable decision must be likely to redress

that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted) (alteration in original).

Defendant Sloan filed an answer to the second amended complaint (ECF No. 21) prior to filing this motion to dismiss under Rule 12(b)(6). (ECF No. 38.) A post-answer motion to dismiss pursuant to 12(b)(6) is not permitted. *See* Fed. R. Civ. P. 12(b)(6). However, an untimely motion to dismiss "may be properly considered as one for judgment on the pleadings under Fed. R. Civ. P. 12(c), and evaluated, nonetheless, under the standards for dismissal under 12(b)(6)." *Doe v. Sentech Empl. Servs.*, 186 F. Supp. 3d 732, 736 (E.D. Mich. 2016) (quotations omitted); *see also Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n.1 (6th Cir. 1988). Accordingly, the Court will construe Sloan's motion as one for judgment on the pleadings and analyze it under the same standard as one to dismiss.

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

15

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plausible claim need not contain "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

When defendants raise both the 12(b)(1) and 12(b)(6) motions, the Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (internal citations omitted).

## IV.   Analysis

For the reasons below, the Court grants Defendants City of Garden City, the Garden City Building Department, Dale Dougherty, the Garden City City Council, and Patrick J. Sloan's motions to dismiss for a failure

to state a claim.[8] The Court also grants Defendant Jeff Van Dam's motion to dismiss for lack of subject-matter jurisdiction.

### A. Defendants Building Department and Dougherty

#### i. *Defendant Building Department*

Plaintiff names the Garden City Building Department as well as the City of Garden City as Defendants. (ECF No. 15.) Under Michigan law, however, municipal departments are not separate legal entities capable of being sued because they are "merely agencies of the city." *Carey v. Hall*, No. 12-14777, 2013 WL 174503, at *1 (E.D. Mich. Jan. 3, 2013) (citing *Boykin v. Van Buren Twp*, 479 F.3d 444, 450 (6th Cir. 2007);

---

[8] Defendants Garden City, the Building Department, Dougherty, and City Council additionally filed a motion to dismiss Plaintiff's second amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). (ECF No. 23.) However, Defendants raise this issue only in the abstract, and they neglect to make any arguments in its favor. (*Id.* at PageID.121.) Courts reject and do not pursue arguments which lack analysis because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)); *accord United States v. Hayter Oil Co.*, 51 F.3d 1265, 1269 (6th Cir. 1995); *United States v. Phibbs*, 999 F.2d 1053, 1080 n.12 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994)). Because Defendants Garden City, the Building Department, Dougherty, and City Council leave the court to "put flesh" on their bare assertion of a 12(b)(1) dismissal, the Court declines to address this argument further.

*Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633, 637 n.4 (E.D. Mich. 1996)). The *Carey* Court explained that, although courts apply this principle most frequently to police departments, the same principle "applies with equal force to other city departments." *Id.* For this reason, *Carey* concluded that the Department of Public Works for the City of Taylor was not a separate entity for purposes of civil suit. *Id.* (citing *Michonski v. City of Detroit*, 162 Mich. App. 485, 490 (Mich. Ct. App. 1987) ("finding that the City of Detroit Public Lighting Department was 'not a separate legal entity against which a tort action can be directed.'")).

Similarly, because the Building Department is a municipal agency and not a municipality itself, the Building Department is not a legal entity capable of being sued. *See id.* at *1–2. Accordingly, Plaintiff's complaint against the Building Department fails to state a legal claim, and the Court dismisses the Building Department.

### ii. *Defendant Dougherty in his individual and official capacities*

Plaintiff brings claims against Defendant Dougherty in his individual and official capacities "as representative and employee of

Garden City" under a *respondeat superior* liability theory of 42 U.S.C. § 1983. (ECF No. 15, PageID.78, 86–91.) Plaintiff alleges that Dougherty breached his duties because the Building Department, which is under Dougherty's supervision along with all the departments in Garden City, failed to inform Plaintiff of the moratorium prior to its implementation. (ECF No. 15, PageID.84.) However, as Dougherty correctly points out, Plaintiff fails to make "even the most rudimentary factual allegations about Mr. Dougherty." (ECF No. 23, PageID.131.) Plaintiff fails to plead factual content that would allow the Court to make a reasonable inference as to Dougherty's liability in this case. *See Iqbal*, 556 U.S. at 678. Accordingly, and for the reasons below, both the individual and official capacity claims against Dougherty fail, and the Court dismisses him.

Plaintiff alleges that Dougherty held a supervisory role as manager of Garden City, and that he accordingly "fail[ed] to properly direct and supervise the administration of all departments, including [D]efendant Building Department, which failed to advise Plaintiff [] of the impending moratorium." (ECF No. 15, PageID.84.) Aside from this allegation, Plaintiff fails to produce facts related to Dougherty's alleged misconduct,

and it includes no allegations of direct action—as opposed to supervisory inaction—on Dougherty's part. (*Id.*)

Plaintiff's individual liability theory cannot proceed without allegations of direct action. "Under § 1983, there is no *respondeat superior* or vicarious liability." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992)). When a plaintiff sues an individual actor under § 1983, "[the] plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Because Plaintiff's pleading fails to allege sufficient facts supporting an individual liability theory against Dougherty, Plaintiff's claim fails to state a claim against Dougherty in his individual capacity.

Plaintiff's official capacity claim against Dougherty also fails because Plaintiff additionally names the municipality—the City of Garden City—as a defendant in this suit. "A suit against an individual in his official capacity is the equivalent of a suit against the government entity." *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005) (quoting

20

*Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). When a claim is brought against both an individual in her official capacity and the governmental entity, the claim against an individual in her official capacity is redundant. *Jackson v. Shelby Cty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008). Accordingly, the claim against Dougherty in his official capacity is redundant to the claim against Garden City, and Plaintiff fails to state a claim against Dougherty in his official capacity. For the reasons above, the Court dismisses Dougherty in both his individual and official capacity.

## B. Subject-Matter Jurisdiction over Claims against Defendant Van Dam

Defendant Van Dam challenges subject-matter jurisdiction of this Court over the claims against him because Plaintiff fails to meet the Article III standing requirements.[9] (ECF No. 42, PageID.276, 298–305.) "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack."

---

[9] Van Dam also argues this Court lacks subject-matter jurisdiction because Plaintiff failed to exhaust administrative remedies in the state court. (ECF No. 42, PageID.277, 300–01.) However, it is a well-settled rule that "exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983" in the federal court. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (internal quotations omitted) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Relevant here as raised by Van Dam, a factual attack "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (citing *Gentek Bldg. Prods.*, 491 F.3d at 330) (internal citations omitted). When a court reviews a facial challenge, the court "takes the allegations in the complaint as true." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, when it reviews a factual challenge, "no presumptive truthfulness applies to the factual allegations." *Id.* The court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

Specifically, Van Dam argues that Plaintiff lacks standing because Plaintiff fails to show (1) a causal connection between Van Dam's actions and Plaintiff's alleged harm, and (2) that Plaintiff's alleged harm is redressable via any judgement against Van Dam. (ECF No. 42, PageID.276, 298–305.) The Court agrees on both counts, and Plaintiff accordingly lacks standing to bring the suit against Van Dam.

Plaintiff fails to establish a causal connection that the injury is traceable to Van Dam's actions. *See Lujan*, 504 U.S. at 560. Plaintiff contends that its injury is due to Van Dam's failure to timely inform Plaintiff's representative about an impending moratorium. (ECF No. 15, PageID.83–84.) However, Plaintiff's second amended complaint is devoid of any allegation that Van Dam knew about the pending moratorium or ever had a personal interaction with Plaintiff's representatives prior to the enactment of the moratorium. Therefore, Plaintiff does not provide factual support to establish that its injury is traceable to Van Dam's action.

Moreover, Plaintiff asserts that Van Dam, Administrator of Defendant Building Department, "improperly denied Plaintiff's appeal in violation of Plaintiff's rights to due process and equal protection of the laws." (*Id.* at PageID.85.) On the contrary, Van Dam contends that the Building Department forwarded the appeal to the City Council (ECF No. 51, PageID.546), and the City Council heard Plaintiff's appeal at its regular meeting on December 3, 2018. (ECF No. 42, PageID.295; ECF No. 42-10, PageID.398.) When a court reviews a factual challenge under Rule 12(b)(1), a court need not apply "presumptive truthfulness . . . to the

23

factual allegations," and the court has "wide discretion to allow . . . documents . . . to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co.* 922 F.2d at 325.

The resolution to implement the six-month moratorium adopted by the City Council laid out the appeal procedure for applicants impacted by the moratorium: applicants had to submit a written request for appeal to the Building Department; applicants seeking a hearing on their appeal had to request a hearing in writing; and the hearing would be held before the City Council. (ECF No. 42-6, PageID.361.)

Because the Building Department forwarded Plaintiff's appeal request to the City Council, Van Dam—as Administrator of the Building Department—properly followed the appeal procedure specified in Garden City's resolution in imposing six-month moratorium on processing medical marijuana facilities special use permit applications. (*See id.*)

Additionally, as Van Dam demonstrated in his supporting documentation, that he is neither a member of the City Council nor even a Garden City employee; he is an employee of Buccilli Group, LLC, which provides the Building Department services on a contract with Garden City. (ECF No. 42, PageID.294; ECF No. 42-9, PageID.382 (providing the

24

following contractual term in an agreement between Garden City and Buccilli Group: "A Building Department Administrator, employed by Buccilli, will provide the day to day administration of building inspection services for the Building Department.".) Because the Court is reviewing Building Administrator Van Dam's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court has wide discretion in considering Van Dam's documents to resolve disputed jurisdictional facts. *See Ohio Nat. Life Ins. Co.* 922 F.2d at 325. Reviewing Van Dam's supporting document, the Court concludes that he was not in a position to deny Plaintiff's appeal and cannot be the causal link to Plaintiff's alleged harm. Therefore, Plaintiff fails to establish a causal connection between its injury and Van Dam's action.

Plaintiff also fails to show that the alleged harm is redressable by a judgment against Van Dam. *See Lujan*, 504 U.S. at 561. Neither Van Dam nor the Building Department, which he administers, has authority to make any decision with respect to a special use permit. GARDEN CITY, MICH., CODE OF ORDINANCES § 154.416. According to Garden City's ordinances, the Planning Commission and the City Council have decision-making authority—not Van Dam, the Administrator of

25

Defendant Building Department—because the Planning Commission and the City Council approve or deny special use permit applications. *Id.* Moreover, Van Dam is not a member of the City Council, which enacted the six-month moratorium. (*See* ECF No. 23-6, PageID.169.) Thus, the denial of Plaintiff's special use application due to the moratorium cannot be redressed by a judgment against Van Dam. Because Plaintiff fails to establish 1) a causal connection between its injury and Van Dam's action; and 2) redressability of the harm against Van Dam, Plaintiff lacks standing to sue him. Accordingly, the Court grants Van Dam's motion to dismiss under 12(b)(1) for lack of subject-matter jurisdiction. Because the Court lacks subject-matter jurisdiction for Plaintiff's claims against Van Dam, the Court need not address his 12(b)(6) motion. *See Moir*, 895 F.2d at 269, 272.

## C. Equal Protection Claim

In Count 1, Plaintiff claims that Defendants violated its right to equal protection under both the Fourteenth Amendment of the United States Constitution and Article 1, § 2 of the Michigan Constitution.[10]

---

[10] Plaintiff brings all three of its counts against all Defendants collectively and makes no argument specific to any of them. (ECF No. 15, PageID.86–91.)

Plaintiff alleges that it suffered from Defendants' "disparate treatment of plaintiff from similarly situated applicants" because Defendants had not informed Plaintiff of the six-month moratorium prior to the implementation. (ECF No. 15, PageID.86.) Plaintiff also argues that it was an unlawful act of discrimination to "grandfather[] in ineligible and unqualified applicants" for the special use permit after "adopting an ordinance amendment limiting the number of [medical marijuana] permissible facilities." (*Id.* at PageID.87.)

Federal and Michigan equal protection clauses are coextensive because the "equal protection clause of the Michigan Constitution 'intended to duplicate the federal clause and to offer similar protection.'" *Toth v. Callaghan*, 995 F. Supp. 2d 774, 781 n.6 (E.D. Mich. 2014) (quoting *Doe v. Dep't of Soc. Servs.*, 439 Mich. 650, 670–71 (1992)). The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Similarly, the Equal Protection Clause of the Michigan Constitution reads, "No person shall be denied the equal protection of the laws." M.C.L. Const. Art. 1, § 2.

27

When analyzing federal-state constitutional claims, "courts have routinely treated a federal equal protection claim and a Michigan equal protection claim the same." *Toth*, 995 F. Supp. 2d at 781 n.6 (citing *Bass v. Robinson*, 167 F.3d 1041, 1050 n.4 (6th Cir. 1999)). Thus, Plaintiff's equal protection claim is analyzed under the Fourteenth Amendment standard, and the Court's conclusions under the federal constitution also apply to Plaintiff's equal protection claim under the Michigan Constitution. *See* S*trehlke v. Grosse Pointe Pub. Sch. Sys.*, No. 14-11183, 2014 WL 4603482, at *6 n.13 (E.D. Mich. Sept. 15, 2014) (analyzing the equal protection claim by reference to federal constitutional law for plaintiffs' equal protection claim under both the Fourteenth Amendment and the Michigan Constitution), *aff'd*, 654 F. App'x 713 (6th Cir. 2016).

Under the Equal Protection Clause of the Fourteenth Amendment, the government "cannot make distinctions that 1) burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). A violation of the third type, as Plaintiff alleges, is

characterized as a "class of one" theory. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). For a "class of one" equal protection claim, a plaintiff must plead sufficient facts from which courts can infer that defendants treated the plaintiff differently from similarly situated individuals. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574–75 (6th Cir. 2008); *see also Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that [a plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim.").

However, Plaintiff fails to plead sufficient facts for the Court to infer that Defendants treated Plaintiff differently from similarly situated special use permit applicants. Courts have ruled that "[b]are allegations that *other* applicants, even *all other* applicants, were treated differently [are] insufficient; a plaintiff must show that these *other* applicants were similarly situated to the plaintiff." *Taylor Acquisitions,* 313 F. App'x at 836 (emphasis added) (internal quotation marks omitted). In Plaintiff's allegation that Defendants treated Plaintiff disparately from "similarly situated applicants," Plaintiff provides no facts explaining *how* other

29

special use permit applicants are similarly situated to Plaintiff, or even explaining *who* such similarly situated applicants are. Plaintiff, thus, makes an impermissible bare allegation that it was treated differently. *See id.*

Similarly, Plaintiff also fails to provide facts regarding "ineligible and unqualified applicants" in its argument that Defendants "grandfather[ed] in ineligible and unqualified applicants" for the special use permit. Plaintiff is silent on who such applicants are or why they are ineligible and unqualified. Because Plaintiff does not show that it is similarly situated to those who allegedly received favorable treatment, Plaintiff does not plausibly allege a viable equal protection claim. Accordingly, the Court dismisses Plaintiff's equal protection claim against Defendants Garden City, City Council, and Sloan under both the federal and state constitutions.[11] *See* S*trehlke*, 2014 WL 4603482, at *6.

### D. Substantive Due Process Claim

---

[11] Only state actors are liable under the federal Equal Protection Clause, but equal protection claims under § 1983 "may be brought against individuals as well as municipalities." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citing *West v. Atkins*, 487 U.S. 42, 48–51 (1988)). Thus, Plaintiff's federal equal protection claim is cognizable against the municipality and individual defendants. However, Plaintiff's equal protection claim fails as described above because it fails to plead sufficient facts.

In Count 3 of the Plaintiff's complaint, Plaintiff alleges that Defendants violated its substantive due process rights under the Fifth Amendment of the U.S. Constitution and Article 1, § 17 of the Michigan Constitution because (1) Plaintiff's special use permit application was denied arbitrarily; and (2) the denial of a special use permit subsequently deprived Plaintiff of the use of its existing property. (ECF No. 15, PageID.89–90.) The Fifth Amendment, however, "applies to federal action, not to private action or state action." *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1259 (E.D. Mich. 1992) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)); 1 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 2.03 (3d ed. 1991) ("[O]n its face, Fifth Amendment applies only to federal government; Fourteenth Amendment applies to states"), *aff'd*, 32 F.3d 989 (6th Cir. 1994)). If there is no suggestion that any defendant has an association with the federal government, a Fifth Amendment claim cannot survive. *Id.* (citing *Three Rivers Cablevision Inc. v. City of Pittsburgh*, 502 F. Supp. 1118, 1134 (W.D. Penn. 1980)). Plaintiff here does not suggest that any of the Defendants are associated with the federal government. Thus, Plaintiff has no claim for violation of the Fifth Amendment. Accordingly,

Plaintiff's substantive due process claim under the Fifth Amendment is dismissed.

Turning to Plaintiff's substantive due process claim under the Michigan Constitution, Plaintiff does not argue that the Due Process Clause of either the federal or Michigan Constitution provides broader substantive due process protection than the other. The Due Process Clauses of the Fifth and Fourteenth Amendments, as well as Article 1, § 17 of the Michigan Constitution, all guarantee that a person shall not be deprived of "life, liberty, or property, without due process of law." Because Michigan courts have ruled that where the federal and state constitutions contain "identical or virtually identical provisions, federal law should be followed," *Beck v. Haik*, 234 F.3d 1267 at *3 n.2 (6th Cir. 2000) (citing *People v. Stanaway*, 446 Mich. 643, 649 n.1 (1994); *Sitz v. State Police*, 443 Mich. 744, 763 (1993)), and the Due Process Clause of the Michigan Constitution "affords no greater protection than the federal guarantee," *Am. States Ins. Co. v. State Dep't of Treasury*, 220 Mich. App. 586, 589 n.1 (1996) (citing *Saxon v. Dep't of Social Services*, 191 Mich. App. 689, 698 (1991)), federal precedents determine Plaintiff's due process claim under both the federal and Michigan constitutions. *See*

32

*Beck*, 234 F.3d at *3; *English v. Blue Cross Blue Shield of Michigan*, 263 Mich. App. 449, 459–60 (2004); *Am. States Ins.*, 220 Mich. App. at 589.

To successfully claim a violation of substantive due process, "a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992); *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) (dismissing the plaintiff's substantive due process claim because the plaintiff had no constitutionally protectable interest). According to the Supreme Court, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of it. [Sh]e must, instead, have a legitimate claim of entitlement to it." *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The Supreme Court further explained that the Constitution itself does not create a property interest, but rather a property interest is created by the "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

33

In the context of a discretionary zoning decision, where an entity granting a zoning permit has discretion to deny a permit application despite applicant's compliance with the minimum requirement, the permit applicant has no constitutionally protected property interest. *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *Triomphe Inv'rs v. City of Northwood*, 49 F.3d 198, 203 (6th Cir. 1995); *Silver*, 966 F.2d at 1036. If there is "unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." *Med Corp.*, 296 F.3d at 410 (quoting *Roth*, 408 U.S. at 577).

According to Garden City's ordinance § 154.416, a decision to approve or deny a special use permit application is subject to complete discretion of the Planning Commission and the City Council. Because the City Council denied Plaintiff's special use permit application pursuant to this complete discretionary authority, Plaintiff does not have a constitutionally protected property interest with a special use permit for a medical marijuana facility. Also, for the same reason, Plaintiff does not have a protected property interest in the building that it entered into a purchase agreement—contingent upon the approval of a special use

permit—for the purpose of operating a licensed medical marijuana facility. (*See* ECF No.15, PageID.82.) This is true even though Plaintiff contends that its application and site plans comply with all the zoning rules and regulations and are compatible with the Master Plan of Garden City. (ECF No. 15, PageID.85.); *see Richardson*, 218 F.3d at 517. Plaintiff merely has a unilateral expectation to the permit. *See Med Corp.*, 296 F.3d at 410. Thus, Plaintiff fails to plausibly allege a viable substantive due process claim. *See EJS Props., LLC*, 698 F.3d at 862; *Silver*, 966 F.2d at 1036. Accordingly, the Court dismisses Plaintiff's substantive due process claim against Defendants Garden City, City Council, and Sloan. *See Id.*

### E. Procedural Due Process Claim

In Count 2, Plaintiff alleges that Defendants violated procedural due process under the Fifth Amendment of the U.S. Constitution and Article 1, § 17 of the Michigan Constitution "by denying Plaintiff a public hearing and an opportunity to be heard before [D]efendant Garden City's Planning Commission and other governmental bodies." (ECF No. 15, PageID.88.)

Contrary to Plaintiff's allegation, however, the public record of the City Council's meeting minutes indicates that the City Council heard Plaintiff's appeal on December 3, 2018. (ECF No. 42-10, PageID.398.) For a Rule 12(b)(6) motion, courts "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The City Council's meeting minutes are public records. Thus, the meeting minutes, including minutes from December 3, 2018 (ECF No. 42-10, PageID.398) which include the records of hearing Plaintiff's appeal, are properly before the Court for the Rule 12(b)(6) motion to dismiss.

Plaintiff's allegation of a denial of an "opportunity to be heard before [D]efendant Garden City's *Planning Commission* and *other governmental bodies*" (ECF No. 15, PageID.88 (emphasis added)) employs ambiguous language. Construing Plaintiff's complaint "in the light most favorable to the plaintiff," *Keys*, 684 F.3d at 608, Plaintiff's reference to a hearing before Garden City's Planning Commission should actually be understood as asserting a right to a hearing before Defendant *City Council*. (ECF No. 42-6, PageID.361 (The appeal procedure specified in

36

the City Council's meeting minutes indicates that special use permit applicants seeking for a hearing would be heard before the City Council; there is no procedure for a hearing before the Planning Commission.).) Construing this language in Plaintiff's favor, Plaintiff vindicated its right to appeal because it did, in fact, appeal and appear before the City Council. *See New England Health Care Emps. Pension Fund* 336 F.3d at 501 (Courts may consider public records for a Rule 12(b)(6) motion); (ECF No. 42-10, PageID.398.)

However, because Plaintiff also alleges a denial of a hearing opportunity before *other governmental bodies*—but does not specify which governmental body—the Court reviews its procedural due process claim under the Fifth Amendment and the Michigan Constitution.

Because the Fifth Amendment applies to federal action but not to private or state action, *Haverstick Enter., Inc.*, 803 F. Supp. at 1259, and Plaintiff does not suggest that any Defendant is associated with the federal government, *see id.*, Plaintiff has no claim for violation of the Fifth Amendment. Accordingly, Plaintiff's procedural due process claim under the Fifth Amendment is dismissed. *See id.*

37

Turning to Plaintiff's procedural due process claim under the Michigan Constitution, Plaintiff does not argue—just as with the substantive due process claim—that the Due Process Clause of either the federal or Michigan Constitution provides broader protection than the other. Because Michigan courts follow federal law when the federal and state constitutions have an identical provision,[12] *Beck*, 234 F.3d at *3 n.2 (internal citations omitted), and the Due Process Clause of the Michigan Constitution provides no greater protection than the federal protection, *Am. States Ins. Co.*, 220 Mich. App. at 589 n.1, federal precedent determines Plaintiff's procedural due process claim under both federal and Michigan constitutions. *See Beck*, 234 F.3d at *3; *English*, 263 Mich. App. at 459–60; *Am. States Ins.*, 220 Mich. App. at 589.

Just as with a substantive due process claim, to successfully claim a violation of procedural due process, a "[p]laintiff[] [is] required to demonstrate that [she] had a property interest protected by the Due Process clause, w[as] deprived of that protected interest within the

---

[12] Here, the Due Process Clauses of the federal and Michigan constitutions provide an identical provision by guaranteeing that a person shall not be deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. V; U.S. Const. amend. XIV; M.C.L. Const. Art. 1, § 17.

meaning of the Due Process clause, and that the state did not afford adequate procedural rights before depriving [her] of [her] protected interest." *Henry v. City of Middletown*, 655 F. App'x 451, 462 (6th Cir. 2016).

Thus, Plaintiff must, first, establish the existence of a protected property interest with a special use permit for a medical marijuana facility that Plaintiff applied. However, as the Court concluded above with Plaintiff's substantive due process claim, Plaintiff does not have a constitutionally protected property interest.[13] Because Plaintiff fails to establish the existence of a protected property interest with regards to the special use permit for a medical marijuana facility, Plaintiff fails to plausibly allege a viable procedural due process claim. *See Henry*, 655 F. App'x at 462. Accordingly, the Court dismisses Plaintiff's procedural due process claim against Defendants Garden City, City Council, and Sloan. *See id.*

## V.   Conclusion[14]

---

[13] *See supra* section IV(D) for the Court's analysis of a constitutionally protected property interest with a special use permit for a medical marijuana facility that Plaintiff applied.

[14] Plaintiff has requested to recover damages. (ECF No. 15.) To recover damages in a § 1983 action, a plaintiff must show a causal connection between a

For the foregoing reasons, the Court GRANTS Defendants City of Garden City, the Garden City Building Department, Dale Dougherty, Garden City City Council, and Patrick J. Sloan's motions to dismiss for a failure to state a claim. The Court also GRANTS Defendant Jeff Van Dam's motion to dismiss for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

Dated: September 8, 2020            s/Judith E. Levy
Ann Arbor, Michigan                 JUDITH E. LEVY
                                    United States District Judge

---

constitutional violation and the damages it seeks. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 292, 608 (6th Cir. 2007). Here, however, Plaintiff fails to establish any constitutional violation. Accordingly, Plaintiff is not entitled to a damage recovery. *See id.*

Van Dam requests costs and attorney fees. (ECF No. 42, PageID.279.) 42 U.S.C. § 1988 authorizes awarding attorney fees in § 1983 suits to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 131 (2011) (quoting *Christiansburg Garment Co. v. Equal Emp' Opportunity Comm'n*, 434 U.S. 412, 421 (1978)). Van Dam makes no argument regarding attorney fees and does not argue that Plaintiff's action is frivolous, unreasonable or without foundation. Van Dam also does not provide a record of 28 U.S.C. § 1920 costs. *See* 28 U.S.C. § 1920 ("A judge . . . of any court of the United States may tax as costs the following . . . .") The Court dismisses Plaintiff's claims but does not find Plaintiff's action to be frivolous, unreasonable or without foundation. *See Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (internal citations omitted) ("[A] district court must resist the urge to engage in post hoc reasoning and the hindsight logic of concluding a suit is without foundation because the plaintiff ultimately does not prevail.").) Accordingly, the Court denies Defendant Van Dam's request for costs and attorney fees. *See id.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2020.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager